(No. 21741—

THE PEOPLES FRUIT AND VEGETABLE SHIPPERS ASSOCIATION, Appellee, *vs.* THE COMMERCE COMMISSION *ex rel.* The Illinois Central Railroad Company, Appellant.

*Opinion filed February 23, 1933.*

CHARLES E. FEIRICH, H. A. SPANN, and JOSEPH H. WRIGHT, for appellant.

FORD L. RENDLEMAN, and ISAAC K. LEVY, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

On December 3, 1928, the Peoples Fruit and Vegetable Shippers Association, complainant and appellee, filed a complaint with the Illinois Commerce Commission against the Illinois Central Railroad Company, defendant and appellant. Both parties are Illinois corporations and the questions raised by the complaint involve purely intrastate matters, inasmuch as the subject matter of the complaint concerns shipments originating on the line of the appellant at Cobden, Illinois, and ending in Chicago. After hearings were held before the commission an order was made, negative in character and in favor of the appellant. The appellee took an appeal to the circuit court of Union county, where the order of the commission was reversed on the grounds that the order was clearly against the manifest weight of the evidence; that it was without substantial foundation in the evidence and unlawful and unreasonable; that the commission failed to make findings of fact upon the principal issues in the case, and that the order was not based upon findings of fact. The circuit court set aside the order of the commission and remanded the case back to the commission for further proceedings, granting the parties permission to introduce further evidence. This appeal followed.

The gist of the complaint is that the rules and charges in Perishable Protective Tariff No. 4 applying to the protection of fruits and vegetables in transit from Cobden to Chicago are in violation of sections 32, 37, 38 and 40 of the Public Utilities act of Illinois. The tariff charges for the actual transportation of cars of vegetables and fruits from Cobden to Chicago are not involved in this case. The dispute is over charges for refrigeration services on

such shipments and also alleged preferences in treatment of shippers, which are charged to be unjust and unreasonable. To support these charges the appellee in its complaint set forth specific instances where the tariffs and rules operated oppressively against it.

The specific complaints made are: (a) The charges for standard refrigeration service of $40 and $45 per car are exorbitant and should be reduced to a sum not exceeding $30 per car; (b) that peaches and tomatoes should be placed in the same category as apples, berries and vegetables and not made to bear a charge higher than one made for other produce; (c) that the appellee should be allowed to ship under rules pertaining to "half tank" refrigeration; (d) that the cost-of-ice method under rule 240 of the Protective Tariff is exorbitant and should be reduced to an amount not in excess of $4.50; (e) that it is unjust to apply the "bunker charge" to fruits and vegetables when no different transportation services prevail as to dairy products, meats, packing house products, butter, cheese, poultry, etc., upon which no bunker charge is assessed; (f) that it is wrong to compel the appellee to pay for additional ice at Cobden under rule 240 when the bunkers of the cars are less than seven-eighths full of ice; (g) that the appellee is denied the privilege of shipping under rule 630 in less than car-load lots but is required to ship under standard refrigeration charges, and is therefore discriminated against as to competitive shippers in Iowa and Indiana who ship to Chicago.

The order of the commission covered nearly thirty-five typewritten pages and was exhaustive in its recital of the evidence introduced by both parties at the hearings. The only finding embodied in the order of the commission is: "From a consideration of all of the evidence adduced in this cause the commission is of the opinion, and finds, that the rates, rules, regulations and charges assailed are not shown to be unjust, unreasonable, unduly discriminatory

or unduly prejudicial or otherwise unlawful, and therefore the prayer of the complainant should be denied and the cause dismissed."

The appellee maintains that the portion of the order just quoted is not a finding of fact. The appellant, on the contrary, contends that the order of the commission does find the facts from the evidence given, but argues that the order, being a negative one, does not need to contain findings of fact of the nature that would be required to support an affirmative order. The appellant admits that section 65 of the Public Utilities act does not distinguish between a negative order and an affirmative order when it requires that the commission "shall make and render findings concerning the subject matter and facts inquired into and enter its order based thereon," but makes the distinction upon a basis of common sense and logic. No hard and fast rule can be laid down that will apply to all of the orders of the commission in such cases. However, it can be said, generally speaking, that the findings of fact contained in the order must be consonant with the evidence and the issues adduced by the complaint.

An order of the commission must contain more than a mere reference to the evidence. A valid order under the Public Utilities act must contain a finding of fact, after hearing and investigation, upon which the order is founded, and unless there is such finding in the record the order is void. (*Chicago Railways Co.* v. *Commerce Com.* 336 Ill. 51.) The ultimate facts must be found by the commission, and unless the commission makes and renders findings on these ultimate facts the courts will be helpless in their effort to determine whether the order is based upon such findings. (*Public Utilities Com.* v. *Springfield Gas Co.* 291 Ill. 209.) In *Chicago Railways Co.* v. *Commerce Com. supra,* we said that the commission was created to perform what was essentially a legislative function, and that the creation of an administrative board, such as the commis-

sion, was a qualification of the maxim that a legislature may not delegate legislative power. Now, inasmuch as the Public Utilities act has made it mandatory for the commission to embody findings of fact in its orders, it certainly is beyond the range of judicial authority to delve into the record and make a finding of fact in order to support a ruling of the commission.

In the present instance the order of the commission is insufficient in that it fails to show that the commission, from the evidence produced at the hearings, made any findings of fact upon which to base the order. The order does contain statements of what evidence the parties produced before it but is bare of findings of fact from that evidence. The seven specific issues raised by the complaint have not been separately dealt with in respect to fact findings. The statement in the order quoted herein is nothing more than a conclusion of the commission that the present rates, rules, regulations, etc., are not in the categories alleged in the complaint. This court from the broad generalizations of the evidence cannot intelligently review the decision of the commission and ascertain whether the facts on which the commission based its order afford a reasonable basis for it. *Kewanee and Galva Railway Co.* v. *Commerce Com.* 340 Ill. 266.

In view of the reasons given, no necessity exists to consider the other errors assigned.

The order of the commission is void and the judgment of the circuit court of Union county in setting aside the order and decision of the commission on the ground that the commission failed to make findings of fact upon the principal issues is affirmed. *Judgment affirmed.*